IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 1:17-00152-01

CORY LEE CALLEN

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant's motion to reconsider the court's order of September 28, 2020, revoking defendant's supervised release and sentencing him to 24 months of imprisonment.

**I.   Discussion**

Defendant argues that this court erred by admitting hearsay in his revocation hearing without making a finding under Federal Rule of Civil Procedure 32.1(b)(2)(C) that the interest of justice excused the declarant's non-appearance.  Defendant relies on the Fourth Circuit's decisions in United States v. Doswell, 670 F.3d 526 (4th Cir. 2012) and United States v. Ferguson, 752 F.3d 613 (4th Cir. 2014).[1]  The rule from those

---

[1] At the outset, the court notes that although due process is the foundation for the right to confrontation in a revocation proceeding, Federal Rule of Criminal Procedure 32.1—not the Due Process Clause or the Confrontation Clause—is the structure itself.  Ferguson, 752 F.3d at 618-19 (noting that while the case involved "constitutional considerations," Rule 32.1 defined "the parameters" of the releasee's "due process right to confrontation" and that the case did "not involve the Sixth Amendment"); Doswell, 670 F.3d at 530 (stating that due process includes the right to confrontation, but that "Rule 32.1 sets forth the parameters of this limited right"); see also Ferguson,

cases is that "unless the government makes a showing of good cause for why the relevant witness is unavailable, hearsay evidence is inadmissible at revocation hearings." Ferguson, 752 F.3d at 617.

In both Doswell and Ferguson, the hearsay evidence at issue was a laboratory report identifying a tested substance as a controlled one. Id. at 616; Doswell, 670 F.3d at 528. The laboratory reports did not fall within a hearsay exception. Also, in both cases, the government offered no explanation for the unavailability of the witnesses. Ferguson, 752 F.3d at 617 ("Thus, there was zero showing of good cause."); Doswell, 670 F.3d at 531 ("Nor did the Government put forward any explanation for its failure to [call the chemist as a witness] or offer any other evidence that Doswell had committed a violation involving heroin.").

Here, the court at least implicitly found that the testimony of Corporal Petty recounting the victim's narrative was an excited utterance under Federal Rule of Evidence 803(2). As the court explained, the victim made her statements while

---

752 F.3d at 622 (Keenan, J., dissenting) ("[A] releasee's rights in a revocation proceeding are not as great as the rights of a defendant facing criminal prosecution.").

2

under the stress of the strangulation attack she had just endured. Because the victim's statements were an excited utterance, the government did not need to make a showing of good cause for her unavailability because Corporal Petty's testimony about what she said is not excluded by the rule against hearsay.

The Fourth Circuit has described when the excited utterance exception applies as follows:

> To qualify under the excited utterance exception, (1) the declarant must have experienced a startling event or condition; (2) she must have related the statement while under the stress or excitement of that event or condition, not from reflection; and (3) the statement or utterance must have related[ed] [sic] to the startling event or condition. The justification for admitting an excited utterance as an exception to the hearsay rule is based on the assumption that an excited declarant will not have had time to reflect on events to fabricate. Additionally, errors in memory will have had less time to accumulate.

United States v. Jennings, 496 F.3d 344, 349 (4th Cir. 2007) (internal quotation marks and citations omitted).

The government here proffered photos of the victim showing that she had suffered, to say the least, a traumatic experience. Defendant conceded that something had happened to her (just not at his hands, he maintained). The statements the victim made to Corporal Petty recounted the attack. Accordingly, the first and third prongs of the excited utterance test are met. The only remaining question is whether the victim was still under the stress or excitement of the event. On this question, the

3

relevant factors are "(1) the lapse of time between the event and the declarations; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements." Id. at 349-50.

In contrast to a present sense impression,

> [a]n excited utterance need not be contemporaneous with the startling event to be admissible. Rather [t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), under the stress of excitement caused by the event or condition.

United States v. Harry, 2014 WL 1950409, at *5 (D.N.M. May 7, 2014) (internal quotation marks and citations omitted)(quoting United States v. Jones, 299 F.3d 103, 112 & n. 3 (2d Cir.2002)). In United States v. Scarpa, 913 F.2d 993, 1016-17 (2d Cir. 1990), the court found no error in the admission under the excited utterance exception of a statement that came "five or six hours" after a beating.[2] In Jennings, a delay of five minutes was not too long of a gap to make the statements of the declarant, a minor who had just been sexually abused,

---

[2] In that case, however, the court noted that the declarant had just heard his sister scream because the assailant had appeared at the emergency room of the hospital, which may have worked to renew the declarant's stress. Id. at 1017.

4

"deliberative statements and not excited utterances." 496 F.3d at 350. In that case, the Fourth Circuit explained,

> At bottom, the analysis must focus on whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related. Morgan, 846 F.2d at 947–48. The lapse of time between the event and the declaration is just one of several factors to consider in the analysis. Id. at 947.

Id. (citing Morgan v. Foretich, 846 F.2d 941, 947 (4th Cir. 1988)).

Here, Corporal Petty responded to a 911 call regarding a woman who had been beaten and was at the hospital. The victim recounted the attack to Corporal Petty while she was receiving treatment at the hospital after the attack, so there was not an extensive lapse of time. The attack that she had endured involved a threat to her life and attempted strangulation. These facts suggest that she was still acting under the stress of a startling event. Because Corporal Petty's testimony recounted an excited utterance, it is not subject to the rule against hearsay, and the rule in Doswell and Ferguson requiring there to be good cause before the court admits hearsay does not apply.

At the hearing, defendant's counsel also argued that when Corporal Petty testified about what the victim told him that

5

defendant had told her, this was double hearsay. As to defendant's giving the victim a choice to have her body or her hair cut with his knife, this was not hearsay because it was not offered for the truth of the matter asserted (not offered to show that he actually was going to cut her, but only that he had made the threat). As to defendant's telephone call to the victim stating that he was being shot at and needed to be picked up, this theoretically could fall under the excited utterance exception. See Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Statements made while being shot at surely meet the excited utterance exception. But unlike with the attack, the fact of the startling event—a shooting—was not established.[3] Therefore, Corporal Petty's testimony about what the victim told him that the defendant told her was hearsay. Nevertheless, because the defendant's own testimony, and that of his alleged alibi, placed him in Charleston in time to have committed the attack, the testimony about the phone call was not necessary to the court's

---

[3] The photos of the victim and Corporal Petty's observations of her, together with defendant's concession that something had happened to her, supported the court's determination that there had been a startling event (a strangulation attack). In contrast, there was nothing similar to support a finding that defendant had been involved in a startling event (a shooting).

6

ultimate conclusion that the government proved by a preponderance of the evidence that he violated the terms of his supervised release.

Even if the victim's statement was not an excited utterance, it was admissible because the court found it reliable and the government showed good cause for not presenting the victim as a witness. "When hearsay evidence is reliable and the government has given a satisfactory reason for not producing the adverse witness, the hearsay evidence likely will be admissible under Rule 32.1." United States v. Woods, 561 F. App'x 270, 273 (4th Cir. 2014) (citing Doswell, 670 F.3d at 530).

Here, defendant acknowledges that the court made a finding of reliability. (See ECF No. 87, at ¶ 4.) The court found Corporal Petty's account of the victim's statement reliable because the victim made it while under the stress of a startling event. There was also good cause for her non-appearance: despite the government's diligent efforts, she could not be found and subpoenaed. Assistant United States Attorney Timothy Boggess represented to the court that he had worked with local law enforcement—including over the weekend prior to the revocation hearing—to try to locate the victim, to no avail. Considering that defendant had threatened the victim's life, this is hardly surprising. It is one thing to report violent

7

abuse to the police at the hospital; it is quite another thing to come to court and testify about it. Unlike in the cases that defendant relies upon, the government showed a diligent attempt to find the victim here.

Defendant cites no authority establishing that the government's inability, despite a diligent search, to find a victim who had been violently attacked less than two months prior to the hearing is not good cause for failing to present her as a witness. In reversing the trial court in Ferguson, the Fourth Circuit noted that "[b]ecause there was no evidence of good cause, as Doswell requires, the introduction of the laboratory report was error." 752 F.3d at 617 (emphasis added). Similarly, in Doswell, the government did not "put forward any explanation for its failure to" call the declarant as a witness. 670 F.3d at 531 (emphasis added). In contrast to those cases, the government did provide an explanation here.[4]

---

[4] Woods possibly supports defendant's contention that the government's explanation here was insufficient. There, the witnesses did not attend the revocation hearing and had not been subpoenaed. Woods, 561 F. App'x at 272. But because Woods did not say whether the government had made a diligent search, that case is ultimately unavailing to defendant. See id. Moreover, that case is not binding authority, and the facts there contrast with those here in that, there, the district court failed to make a reliability finding at any point during the hearing. See id.

8

**II. Conclusion**

For the reasons expressed above, defendant's motion for reconsideration is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 15th day of October, 2020.

Enter:

*David A. Faber*

David A. Faber
Senior United States District Judge